MARCIA ALYCE MUCHMORE, Plaintiff v. TALLMAN H. TRASK, Defendant

No. COA07-995

(Filed 16 September 2008)

1. **Husband and Wife— prenuptial agreement—alimony— waiver of spousal support—lex loci contractus**

The trial court did not err by concluding that the waiver of spousal support in the parties' prenuptial agreement was enforceable because: (1) our Supreme Court has stated that unless the premarital agreement appears to have been intended to be performed elsewhere, the construction is to be governed by the law of the place where it was intended to be performed; (2) the waivers of spousal support were agreed to on 14 March 1986 in California where such agreements were sanctioned by the California legislature; (3) alimony waivers were valid in this State when the parties relocated here in 1995; (4) the waivers are presumed valid under the doctrine of lex loci contractus and are not void as against North Carolina public policy; and (5) the record indicated that the parties intended their premarital agreement to be governed by California law when it was entered into in Pasadena, California and failed to provide that the law of another state should govern, the calculation for determining the value of defendant's separate property contribution specifically called for the utilization of the cost of living index for Southern California cities, and the arbitration provision in the agreement called for the application of the California Arbitration Act.

MUCHMORE v. TRASK

[192 N.C. App. 635 (2008)]

**2. Appeal and Error— preservation of issues—failure to raise constitutional issue at trial**

Defendant's assignment of error regarding the Full Faith and Credit Clause of the United States Constitution was waived based on a failure to raise it at trial.

**3. Husband and Wife— prenuptial agreement—alimony— physical revocation immaterial**

The trial court did not err by concluding that a signed writing revoking the parties' premarital agreement entered in California was required and by declining to find whether the alleged tearing of the premarital agreement occurred because: (1) California's UPAA requires that a premarital agreement may be amended or revoked only by a written agreement signed by the parties; and (2) in this case, neither party claimed that a subsequent writing to rescind or revoke the agreement was executed, and thus allegations surrounding the purported physical revocation were immaterial.

**4. Estoppel— equitable estoppel—enforcement of premarital agreement**

The trial court did not err by concluding that defendant was not equitably estopped from seeking enforcement of the parties' premarital agreement because, although plaintiff contends the alleged tearing of the agreement was instrumental to her decision to move with defendant to North Carolina, and consequently caused her to incur a $195,000 credit line with defendant in the purchase of real property, there was competent evidence in the record supporting the trial court's finding that plaintiff did not rely on defendant's alleged revocation.

**5. Specific Performance— premarital agreement—valid contract**

The trial court did not err by granting specific performance of the parties' premarital agreement because: (1) the parties' agreement was a valid contract guided by California law and enforceable in this State; and (2) the remedy of specific performance is available to compel a party to do precisely what he ought to have done without being coerced by the court.

Appeal by defendant from judgment entered 29 December 2006 by Judge Donna S. Stroud in Wake County District Court. Appeal by plaintiff from order and judgment entered 8 March 2007 by Judge Jane P. Gray. Heard in the Court of Appeals 20 February 2008.

**MUCHMORÉ v. TRASK**

[192 N.C. App. 635 (2008)]

*Wyrick Robbins Yates & Ponton, LLP, by K. Edward Greene and Tobias S. Hampson, for plaintiff-appellant/cross-appellee.*

*Manning, Fulton & Skinner, P.A., by Michael S. Harrell, for defendant-appellee/cross-appellant.*

BRYANT, Judge.

Tallman H. Trask (defendant) appeals the trial court's order voiding provisions within the parties' prenuptial agreement waiving spousal support. Marcia Alyce Muchmore (plaintiff) appeals the trial court's refusal to find (1) that the agreement was mutually rescinded or (2) that defendant is equitably estopped from asserting the agreement was not rescinded. For the reasons stated below, we affirm in part and reverse in part.

*Facts*

In 1984, plaintiff and defendant began dating while living in California. The parties executed a premarital agreement on 14 March 1986 and were married the next day. The premarital agreement was recorded in Los Angeles County, California and contained detailed provisions entitling each party to their premarital assets upon a dissolution of the marriage, as well as an explicit waiver of spousal support. Shortly after their wedding, defendant obtained employment with the University of Washington and the parties moved to Seattle, Washington. The marriage became strained in the early 1990's, but defendant did not want a divorce while their two children were young.

Plaintiff claims an altercation occurred in Washington between January and March 1994 during which defendant became intoxicated and sexually assaulted her. Plaintiff maintains that the next day defendant approached her to make amends and tore up a copy of the premarital agreement. Plaintiff asserts that she thanked defendant for tearing up the agreement and, as a result, continued to make efforts to save the marriage, including moving to North Carolina in 1995. However, ten years later, the parties separated on 21 April 2005.

On 15 September 2005, plaintiff filed a complaint for (1) child custody, (2) child support, (3) attorney's fees with respect to the child custody and support claims, (4) postseparation support and alimony, (5) attorneys fees with respect to the spousal support claims, and (6) equitable distribution. On 29 November 2005, defendant filed an

answer (1) raising the premarital agreement as an affirmative defense, and (2) counterclaiming for specific performance of the premarital agreement. On 27 January 2006, in response to defendant's counterclaim, plaintiff alleged that the premarital agreement had been terminated by agreement after the parties' dispute in 1994 or, in the alternative, that it was legally invalid and unenforceable. On 9 May 2006, plaintiff's responsive pleading was amended by consent, and plaintiff further claimed the agreement was void as against North Carolina public policy, and asserted affirmative defenses of: (1) rescission, (2) vagueness, (3) estoppel, (4) unconscionability, and (5) undue influence. Plaintiff moved for summary judgment on 4 August 2006 claiming that the premarital agreement was invalid, and on 8 August 2006, defendant moved for summary judgment to enforce the agreement.

On 29 December 2006, the Honorable Donna S. Stroud entered an order granting partial summary judgment for both parties, and concluded: (1) the premarital agreement was formed under California law and was valid in California; (2) North Carolina law controls enforcement of the agreement; (3) the waiver of alimony provision was void as against public policy when the agreement was executed and plaintiff was entitled to summary judgment on that issue; (4) defendant was entitled to summary judgment as to plaintiff's defenses of undue influence, unconscionability, and vagueness; and (5) that genuine issues of material fact remained as to plaintiff's defenses of rescission, abandonment, and estoppel.

Judge Stroud's order left undecided the remaining issues of post-separation support, alimony, attorneys fees, recission of the agreement, and equitable distribution. Judge Stroud also denied defendant's Rule 54(b) motion requesting immediate certification of the order for appeal on the grounds that such a motion would be more appropriate before the judge assigned to hear the pending issues on the case. Plaintiff's claims for postseparation support and attorney fees were later heard before the Honorable Vinston Rozier, Jr., who entered an order on 25 February 2007 granting postseparation support and attorneys fees in favor of plaintiff. Defendant's claim for specific performance and plaintiff's correlating defenses were then heard 9 January 2007 by the Honorable Jane P. Gray.

By order filed 5 March 2007, Judge Gray (1) granted defendant's claim for specific performance of the premarital agreement; (2) denied plaintiff's defenses of rescission, abandonment, and estoppel;

and (3) certified the claims for immediate appeal pursuant to Rule 54(b), because all issues concerning the parties' prenuptial agreement were decided. As a result, plaintiff appeals from the 5 March 2007 order, and defendant appeals from the 29 December 2006 order.

### Standard of Review

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that any party is entitled to judgment as a matter of law." N.C. Gen. Stat. § 1A-1, Rule 56(c) (2006). In deciding a motion for summary judgment, a trial court must consider the evidence in the light most favorable to the non-moving party. *Summey v. Barker*, 357 N.C. 492, 496, 586 S.E.2d 247, 249 (2003) (citation omitted). If there is any genuine issue of material fact, a motion for summary judgment should be denied. *Howerton v. Arai Helmet, Ltd.*, 358 N.C. 440, 471, 597 S.E.2d 674, 694 (2004). We review an order allowing summary judgment de novo. *Id.* at 470, 597 S.E.2d at 693 (citation omitted).

### DEFENDANT'S APPEAL

Defendant raises three issues on appeal: whether the trial court erred in (I) refusing to enforce the spousal support waiver; (II) ruling that the spousal support waiver violated North Carolina public policy; and (III) whether the application of North Carolina law to the premarital agreement violates the Full Faith and Credit clause of the United States Constitution.

### I & II

[1] Defendant argues that the waiver of spousal support in the prenuptial agreement is enforceable. We agree.

"The general rule is that things done in one sovereignty in pursuance of the laws of that sovereignty are regarded as valid and binding everywhere . . . ." *Davis v. Davis*, 269 N.C. 120, 125, 152 S.E.2d 306, 310 (1967) (citation and quotations omitted). "North Carolina has long adhered to the general rule that '*lex loci contractus*,' the law of the place where the contract is executed governs the validity of the contract." *Morton v. Morton*, 76 N.C. App. 295, 299, 332 S.E.2d 736, 738 (1985) (citations omitted). "[P]rinciples of construction applicable to contracts also apply to premarital agreements . . . ." *Howell v. Landry*, 96 N.C. App. 516, 525, 386 S.E.2d 610, 615 (1989) (citation omitted). However, "foreign law or rights based thereon will not be

given effect or enforced if opposed to the settled public policy of the forum." *Davis*, 269 N.C. at 125, 152 S.E.2d at 310 (citations and quotations omitted).

In California, the Uniform Premarital Agreement Act (UPAA) became effective 1 January 1986 and applicable to any premarital agreement executed on or after that date. *In re Marriage of Bellio*, 105 Cal. App. 4th 630, 633, 129 Cal. Rptr. 2d 556, 558 n.1 (Cal. App. 2d Dist. 2003). Under Calfornia's Family Code, "[p]arties to a premarital agreement may contract with respect to . . . their personal rights and obligations, not in violation of public policy or a statute imposing a criminal penalty." Cal. Fam. Code § 1612(a)(7) (2008) (continuing Cal. Civ. Code § 5312) *reviewed by In re Marriage of Pendleton & Fireman*, 24 Cal. 4th 39, 53, 5 P.3d 839, 848 (2000) ("a premarital waiver of spousal support does not offend contemporary public policy").

The North Carolina General Assembly adopted the UPAA such that it became effective in North Carolina on 1 July 1987. N.C. Gen. Stat. §§ 52B-1 et seq.; *Huntley v. Huntley*, 140 N.C. App. 749, 752, 538 S.E.2d 239, 241 (2000). Under the UPAA, as adopted in North Carolina, "[p]arties to a premarital agreement may contract with respect to . . . [t]he modification or elimination of spousal support." N.C. Gen. Stat. 52B-4(a)(4) (2007); *See also Stewart v. Stewart*, 141 N.C. App. 236, 240, 541 S.E.2d 209, 212 (2000). However, prior to the adoption of the UPAA, a waiver of spousal support or alimony in a premarital agreement was held to be against North Carolina's public policy. *See Motley v. Motley*, 255 N.C. 190, 120 S.E.2d 422 (1961).

In *Motley*, the parties executed a premarital agreement which purported to release and bar the right of the plaintiff spouse from having the court award her alimony. *Id.* at 192, 120 S.E.2d at 423. Our Supreme Court held that the prenuptial agreement was in violation of North Carolina public policy and, to the extent the agreement purported to relieve the husband from the duty of supporting his wife, the agreement was null and void. *Id.* at 193, 120 S.E.2d at 424 ("It is the public policy of the State that a husband shall provide support for himself and his family. This duty he may not shirk, contract away, or transfer to another.") (internal citations omitted).

In *Howell*, the parties entered into a prenuptial agreement in North Carolina in 1979 before getting married in Las Vegas. 96 N.C. App. at 519, 386 S.E.2d at 612. The agreement "attempt[ed] to preclude the parties' right to receive alimony if otherwise eligible under

the laws of North Carolina." *Id.* at 520, 386 S.E.2d at 613. In an opinion issued by this Court stemming from a divorce action instituted in 1985, we noted that the UPAA did not apply to the premarital agreement and that premarital agreements concerning alimony were void as against public policy. *Id.* at 531, 386 S.E.2d at 619.

In *Prevatte v. Prevatte*, 104 N.C. App. 777, 411 S.E.2d 386 (1991), the parties entered into a prenuptial agreement in Virginia in 1968 and sought a divorce in North Carolina apparently after 1 July 1987. *Id.* In the prenuptial agreement, "[the] wife did purport to release her claims to alimony." *Id.* at 782, 411 S.E.2d at 389 n.1. In a *footnote*, this Court noted that the UPAA became effective 1 July 1987 and is applicable to premarital agreements *executed* on or after that date. *Id.* The Court concluded that the UPAA was not applicable to the parties' agreement and the agreement did not bar the wife's claim for alimony. *Id.* (citing *Howell*, 96 N.C. App. 516, 386 S.E.2d 610).

Here, plaintiff argued before the trial court, and asserts on appeal, that the parties' waiver of spousal support was void as against North Carolina's public policy when the prenuptial agreement was executed in 1986, and therefore, such a waiver is unenforceable in the instant case. This argument relies on our common law which barred the enforcement of such waivers prior to codification of the UPAA.

Plaintiff asserts the trial court correctly held, in reliance on the footnote in *Prevatte*, 104 N.C. App. at 782, 411 S.E.2d 389 n.1, that the spousal support waiver provision in the parties' premarital agreement was unenforceable due to its violation of North Carolina public policy. However, the application of North Carolina law to invalidate the Virginia alimony waiver was not one of the issues or assigned errors before the *Prevatte* Court.[1] "Language in an opinion not necessary to the decision is *obiter dictum* and later decisions are not bound thereby." *Trustees of Rowan Technical College v. J. Hyatt Hammond Associates, Inc.*, 313 N.C. 230, 242, 328 S.E.2d 274, 281 (1985). Thus, we hold that plaintiff's reliance on *Prevatte* is misplaced.

Furthermore, the facts of *Howell* and *Motley* are distinguishable from those of the instant case. In both *Howell* and *Motley*, there is

---

1. This Court noted that since the trial court found the antenuptial agreement to be valid in Virginia and thus enforceable in North Carolina, it was error for the trial court to allow equitable distribution of property acquired during the marriage: "We hold that the antenuptial agreement was a valid bar to wife's claim and the trial court erred in concluding the property acquired during the marriage was subject to equitable distribution." *Id.* at 782, 411 S.E.2d at 389.

no indication the premarital agreements were executed somewhere other than in North Carolina and no indication the parties intended to live anywhere other than North Carolina when they executed their agreements. *See Howell*, 96 N.C. App. 516, 386 S.E.2d 610 (contemplating North Carolina law to apply), and *Motley*, 255 N.C. 190, 120 S.E.2d 422 (executed and entered in North Carolina). Moreover, at the time the *Howell* and *Motley* agreements were executed or entered into in North Carolina, our existing public policy clearly forbade waiving alimony in a premarital agreement. *See Motley*, 255 N.C. 193, 120 S.E.2d 424; and *Howell*, 96 N.C. App. at 531, 386 S.E.2d at 619. Therefore, from the moment they were executed, they were in violation of North Carolina public policy.

The long-standing precedent of our Supreme Court as stated in *Hicks v. Skinner*, 71 N.C. 539 (1874), is that unless the premarital agreement at issue "appears clearly to have been intended to be performed elsewhere, the construction is to be governed by the law of the place where it is *intended* to be performed." *Id.* at 545 (original emphasis). This Court has held that marital contracts, which include premarital agreements, shall be "viewed today like any other bargained-for exchange," *see Hill v. Hill*, 94 N.C. App. 474, 480, 380 S.E.2d 540, 545 (1989) (citations and internal quotations omitted), and that the law of the state where a contract is formed should govern its validity, *Morton*, 76 N.C. App. at 299, 332 S.E.2d at 738. In order "[t]o render foreign law unenforceable as contrary to public policy, it must violate some prevalent conception of good morals or fundamental principle of natural justice or involve injustice to the people of the forum state." *Boudreau v. Baughman*, 322 N.C. 331, 342, 368 S.E.2d 849, 857-58 (1988) (citations omitted).

In this case, the waivers of spousal support were agreed to on 14 March 1986 in California, where such agreements were sanctioned by the California legislature. *In re Marriage of Bellio*, 105 Cal. App. 4th at 633, 129 Cal. Rptr. 2d at 558 n.1 (UPAA effective as of 1 January 1986 in California). Moreover, alimony waivers were valid in this State when plaintiff and defendant relocated here in 1995. *See* N.C.G.S. § 52B-4(a)(4) (1995). Thus, under our doctrine of *lex loci contractus*, the waivers in issue are presumed valid per California law. Therefore, we hold that the waivers of alimony and spousal support in the current action are not void as against North Carolina's public policy.

Additionally, the record indicates that the parties intended their premarital agreement to be governed by California law. The agree-

ment was entered into in Pasadena, California and fails to provide that the law of a state other than California law should govern. Moreover, the calculation for determining the value of defendant's separate property contribution specifically calls for the utilization of the cost of living index for Southern California cities such as Los Angeles, Long Beach, and Anaheim. And, the arbitration provision in the agreement calls for the application of the California Arbitration Act. Consequently, "in the absence of circumstances indicating a different intention," we find sufficient prima facie evidence in the parties' agreement to support the exclusive application of California law. *Tanglewood Land Co. v. Wood*, 40 N.C. App. 133, 137, 252 S.E.2d 546, 550 (1979) (citing *Fast v. Gulley*, 271 N.C. 208, 155 S.E.2d 507 (1967); and *Roomy v. Allstate Ins. Co.*, 256 N.C. 318, 123 S.E.2d 817 (1962)). Accordingly, we hold that the waiver of spousal support is valid and enforceable in North Carolina pursuant to California law.

### III

**[2]** Defendant's assignment of error regarding the Full Faith and Credit Clause of the United States Constitution was not raised at trial. Accordingly, this assignment of error is waived on appeal. *State v. Fernandez*, 346 N.C. 1, 18, 484 S.E.2d 350, 361 (1997) (citing *State v. Jaynes*, 342 N.C. 249, 263, 464 S.E.2d 448, 457 (1995) ("[e]ven alleged errors arising under the Constitution of the United States are waived if defendant does not raise them in the trial court")).

### PLAINTIFF'S APPEAL

Plaintiff raises three issues on appeal: (I) whether the trial court erred in determining that a rescission or abandonment of the premarital agreement was required to be in writing; (II) whether the trial court erred in finding that defendant was not estopped from enforcing the premarital agreement; and (III) whether the trial court erred in ordering specific performance of the premarital agreement.

### I

**[3]** Plaintiff contends that a signed writing revoking the premarital agreement was not required, and that the trial court erred by declining to find whether the alleged tearing of the premarital agreement occurred. We disagree.

California's UPAA requires that a premarital agreement "may be amended or revoked only by a written agreement signed by the parties." Cal. Fam. Code § 1614 (2007). In this case, neither party claims that a subsequent writing to rescind or revoke the agreement was

executed; therefore, allegations surrounding the purported physical revocation are immaterial. Accordingly, the trial court did not err in not making findings of fact regarding the alleged tearing of the agreement, and this assignment of error is overruled.

*II*

[4] Plaintiff also argues that defendant should be equitably estopped from seeking enforcement of the premarital agreement. We disagree.

"[E]quitable estoppel . . . arises when an individual, by acts, representations, admissions, or by silence when he or she has a duty to speak . . . induces another to believe that certain facts exist, and such other person rightfully relies and acts upon that belief to his or her detriment." *Amick v. Amick*, 80 N.C. App. 291, 294, 341 S.E.2d 613, 614 (1986) (citing *Thompson v. Soles*, 299 N.C. 484, 263 S.E.2d 599 (1980)). However, in this case, the trial court found:

> 12. Assuming for the sake of argument that the defendant did destroy a copy of the Agreement before the plaintiff and communicated his intention to rescind or cancel the Agreement, the plaintiff [did not rely upon that act] to her detriment[.] . . . She continued to acquire properties and sign notes with the defendant after the alleged act just as she had done before the alleged act. She was able to complete a doctorate she was working on at the University of Washington, although the relocation to North Carolina did delay her in obtaining this doctorate. She also claims to have advised her mother to make certain provisions in her mother's estate and gift planning based upon her claimed belief that the Agreement had been revoked by the defendant. These decisions made by the plaintiff's mother were totally within the mother's discretion in any event.

> 13. The plaintiff's testimony is contradicted by her testimony in her deposition, when she could not point to one action she had taken or not taken after the alleged destruction of the Agreement that would have been different if the Agreement had not supposedly been cancelled/rescinded by the defendant. The plaintiff's deposition testimony is also equivocal as to whether she would have left the marriage if the defendant had not supposedly destroyed the Agreement. The court finds as a fact that assuming the Agreement was destroyed as testified to by the plaintiff that the plaintiff continued in the marriage just as she would have done if the Agreement was not supposedly destroyed[.]

We are bound by the trial court's findings even if contrary evidence exists so long as there is some evidence to support those findings. *Nationsbank of North Carolina, N.A. v. Baines*, 116 N.C. App. 263, 269, 447 S.E.2d 812, 815 (1994) (citation omitted). Moreover, it is well established that "[q]uestions of credibility and the weight to be accorded the evidence remain in the province of the finder of facts." *Scott v. Scott*, 336 N.C. 284, 291, 442 S.E.2d 493, 497 (1994) (citation omitted).

Though plaintiff argues that the alleged tearing of the agreement was instrumental to her decision to move with defendant to North Carolina, and consequently caused her to incur a $195,000 credit line with defendant in the purchase of real property, we nevertheless find competent evidence in the record supporting the trial court's finding that plaintiff did not rely on defendant's alleged revocation. We affirm the trial court's order finding that defendant is not equitably estopped from enforcing the premarital agreement, and accordingly, plaintiff's assignment of error is overruled.

*III*

**[5]** Last, plaintiff claims that the trial court erred in granting specific performance of the agreement. We disagree.

We have already concluded that the parties' premarital agreement is a valid contract guided by California law and enforceable in this State. During the course of this litigation, defendant has asked for the enforcement of the agreement, while plaintiff has actively litigated to avoid performance according to the express terms of the bargain. Because "[t]he remedy of specific performance is available to compel a party to do precisely what he ought to have done without being coerced by the court," we hold that the order of specific performance by the trial court was appropriate. *Munchak Corp. v. Caldwell*, 301 N.C. 689, 694, 273 S.E.2d 281, 285 (1981) (citation and internal quotations omitted). Accordingly, plaintiff's assignment of error is overruled.

The 29 December 2006 order of the trial court is affirmed in part and reversed in part; the 8 March 2007 order is affirmed.

Affirmed in part; reversed in part.

Chief Judge MARTIN and Judge ELMORE concur.