McCULLOUGH, Judge.
*114 Timothy Craig Patterson ("defendant") appeals the denial of his motion for summary judgment. For the following reasons, we affirm.
*115 I. Background
Cathy Suggs Patterson ("plaintiff") and defendant married on 25 April 1974, separated in December 2001, and later divorced. Coinciding with their separation, plaintiff and defendant made and entered into a separation and property settlement agreement (the "agreement") on 7 December 2001. The agreement provided as follows concerning alimony:
[Defendant] shall pay to [plaintiff] a monthly sum of alimony in the amount of $2,000.00. This payment shall begin on the 1st day of January 2002 and continue on the same day of each month thereafter until the occurrence of one of the following events:
1. [Defendant's] death[;]
2. [Plaintiff's] remarriage [; or]
3. [Plaintiff's] death[.]
This obligation shall terminate in the event one or more of the above referenced events occurs.
*861 Pursuant to its terms, the agreement was never incorporated into a court order or judgment during plaintiff's and defendant's divorce.
On 16 July 2013, plaintiff commenced this action by filing a verified complaint seeking specific performance of defendant's alimony obligations pursuant to the terms of the agreement. Plaintiff alleged defendant "paid all alimony payments until May 2013[,]" but has since "refused to make further payments as provided in the [agreement] ... without justification or excuse." Defendant responded to the complaint by filing an answer and a separate motion for summary judgment on 2 October 2013. In both his answer and motion for summary judgment, defendant pled plaintiff's cohabitation as a bar to the enforcement of the alimony provision of the agreement and argued the agreement was void as against public policy. Plaintiff filed replies to defendant's motion for summary judgment and defendant's answer on 20 November 2013.
Based on the various pleadings, affidavits submitted in support of the pleadings, and plaintiff's deposition taken 26 September 2013, it is undisputed that prior to plaintiff filing this action, plaintiff was cohabitating and defendant ceased making alimony payments in accordance with the agreement.
Following a hearing on defendant's motion for summary judgment in Harnett County District Court, the trial judge entered an order on *116 22 April 2014 in which she denied defendant's motion and attempted to certify the matter for appeal. Defendant filed notice of appeal from the order on 21 May 2014.
On 15 July 2014, the trial judge entered an amended summary judgment order by consent of the parties in which she clarified the certification of the matter for appeal; the amended order, however, was identical to the first in that it denied defendant's motion for summary judgment based in large part on the following determinations:
11. The [agreement] entered into by and between the parties to this action is not, by its own terms, violating public policy, promoting any action to violate public policy, or otherwise void.
12. When the totality of the terms of the parties' [agreement] are read, as a whole, the [a]greement fails to violate public policy and pursuant to North Carolina Case Law, continues to remain valid and in full force and effect.
Defendant filed notice of appeal from the amended order on 15 July 2014.
II. Discussion
The sole issue on appeal is whether the trial court erred in denying defendant's motion for summary judgment. Defendant contends the trial court did err because the alimony provision in the agreement, which does not provide for termination of alimony payments upon plaintiff's cohabitation, is void as against public policy. Therefore, defendant asks this Court to declare the alimony provision void, reverse the trial court's decision, and direct entry of summary judgment in his favor.
"Our standard of review of an appeal from summary judgment is de novo; such judgment is appropriate only when the record shows that 'there is no genuine issue as to any material fact and that any party is entitled to a judgment as a matter of law.' " In re Will of Jones, 362 N.C. 569, 573, 669 S.E.2d 572, 576 (2008) (quoting Forbis v. Neal, 361 N.C. 519, 524, 649 S.E.2d 382, 385 (2007) ). In this case, the material facts are undisputed and this Court's review is limited to whether the trial court erred as a matter of law.
On appeal, defendant recognizes that the freedom of contract is a fundamental constitutional right, but contends the right is limited by public policy considerations. Illustrative of defendant's contention and pertinent to this case, N.C. Gen.Stat. § 52-10.1 provides that "[a]ny married couple is ... authorized to execute a separation agreement *117 not inconsistent with public policy...." N.C. Gen.Stat. § 52-10.1 (2013). Defendant then asserts the public policy of North Carolina regarding alimony and cohabitation is reflected in N.C. Gen.Stat. § 50-16.9, which governs modification of contested and uncontested court orders for alimony or postseparation support. As defendant points out, prior to 1995, N.C. Gen.Stat. § 50-16.9 provided, *862 "[i]f a dependent spouse who is receiving alimony under a judgment or order of a court of this State shall remarry, said alimony shall terminate." N.C. Gen.Stat. § 50-16.9 (1993). However, N.C. Gen.Stat. § 50-16.9 was amended in 1995 to refer to postseparation support in addition to alimony and to include cohabitation and death as events terminating court ordered alimony or postseparation support. See 1995 N.C. Sess. Laws ch. 319, § 7. Thus, N.C. Gen.Stat. § 50-16.9 now provides as follows:
If a dependent spouse who is receiving postseparation support or alimony from a supporting spouse under a judgment or order of a court of this State remarries or engages in cohabitation, the postseparation support or alimony shall terminate. Postseparation support or alimony shall terminate upon the death of either the supporting or the dependent spouse.
N.C. Gen.Stat. § 50-16.9(b) (2013).
Defendant claims the legislature's amendment to N.C. Gen.Stat. § 50-16.9 in 1995 reflects this Court's opinion in Sethness v. Sethness, 62 N.C.App. 676, 303 S.E.2d 424 (1983), in which this Court looked unfavorably upon cohabitation but upheld the trial court's dismissal of a suit seeking to terminate contractual postseparation support, noting that just "[b]ecause a separation agreement does not specifically prohibit ... cohabitation and may, by implication condone [it], it does not therefore follow that the agreement promotes [it]." 62 N.C.App. at 681, 303 S.E.2d at 428. This Court then stated, "[w]hether the silence of a separation agreement on [cohabitation] renders it void as against public policy is a matter for legislative, not judicial determination." 62 N.C.App. at 681, 303 S.E.2d at 428.
Defendant contends the policy behind the amendment to include cohabitation as a terminating event for court ordered alimony or postseparation support in N.C. Gen.Stat. § 50-16.9 applies equally to contractual alimony or postseparation support.
Upon review of the N.C. Gen.Stat. § 50-16.9, Sethness, and the other cases cited by defendant, we disagree with defendant's view that N.C. Gen.Stat. § 50-16.9 reflects a broad public policy in North Carolina that *118 all alimony or postseparation support, whether court ordered or contractual, shall terminate upon cohabitation of the dependent spouse. In line with many cases decided by this Court, we find the distinction between court ordered and contractual support obligations significant and hold N.C. Gen.Stat. § 50-16.9 only reflects the public policy regarding court ordered alimony or postseparation support. See Acosta v. Clark, 70 N.C.App. 111, 115, 318 S.E.2d 551, 554 (1984) (citing Walters v. Walters, 307 N.C. 381, 386, 298 S.E.2d 338, 342 (1983) (discussing the difference between a separation agreement treated as a contract and a separation agreement that has been approved by the court as part of a court ordered judgment)); see also Williamson v. Williamson, 142 N.C.App. 702, 704, 543 S.E.2d 897, 898 (2001) (emphasizing N.C. Gen.Stat. § 50-16.9 refers to spousal support payments pursuant to a judgment or order). "[I]f the parties wish to preserve their agreement as a contract they need only avoid submitting their agreement to the court." Acosta, 70 N.C.App. at 115, 318 S.E.2d at 554 (citing Walters, 307 N.C. at 386, 298 S.E.2d at 342 ). N.C. Gen.Stat. § 50-16.9 does not, and was not intended to, interfere with the freedom of the parties to agree to terms for alimony that is purely contractual. If the legislature intended to address this court's decision in Sethness and espouse a broad public policy covering contractual alimony or postseparation support, it would not have used language limiting N.C. Gen.Stat. § 50-16.9 to situations where "a dependent spouse ... is receiving postseparation support or alimony from a supporting spouse under a judgment or order of a court of this State [.]" N.C. Gen.Stat. § 50-16.9(b).
Moreover, as this Court pointed out in Sethness, "the clear implication of [cases where separation agreements were found to be void as against public policy] and [ N.C. Gen.Stat. § 52-10.1 ] ... is that such agreements may not by their own terms promote objectives (i.e.: divorce, termination of parental rights) which ore offensive to public policy." 62 N.C.App. at 680, 303 S.E.2d at 427 ; see also *863 Williams v. Williams, 120 N.C.App. 707, 463 S.E.2d 815 (1995) (noting a provision in an agreement that comprises a promise looking towards future separation is void as against public policy because it would discourage the plaintiff from putting forth a concerted effort to maintain the marriage). In Sethness, this Court relied on Riddle v. Riddle, 32 N.C.App. 83, 230 S.E.2d 809 (1977), which is very similar to the present case. As we explained in Sethness,
Riddle holds, in accordance with general principles of contract law, that a separation agreement must be enforced according to its own terms. The applicable provision of this separation agreement, quoted at the outset, provides that [the] plaintiff is to pay [the] defendant certain sums *119 of money. This obligation is to continue until the happening of certain events stated in the agreement (i.e.: emancipation of the child, remarriage of [the] defendant). The agreement also confirms the right of the parties to "live separate and apart" and provides that "neither party shall interfere with the rights, privileges, doings or actions of the other." Under the agreement, cohabitation by [the] defendant with another man does not constitute a breach of the agreement or grounds for termination of [the] plaintiff's support obligation.
62 N.C.App. at 681, 303 S.E.2d at 427-28. Thus, "cohabitation by one party to a separation agreement does not necessarily invalidate the agreement or relieve a party of his support obligations thereunder." Id. at 681, 303 S.E.2d at 427.
Defendant's only argument against reliance on Sethness and Riddle is that those cases were decided prior to the amendments to N.C. Gen.Stat. § 50-16.9. Yet, in Jones v. Jones, 144 N.C.App. 595, 548 S.E.2d 565 (2001), decided after the amendment to N.C. Gen.Stat. § 50-16.9, the Court continued to emphasize that contractual alimony in a separation agreement was not affected by the plaintiff's cohabitation. 144 N.C.App. at 601, 548 S.E.2d at 568. "[T]he separation agreement is preserved as a contract and remains enforceable and modifiable only under traditional contract principles." Id. at 601, 548 S.E.2d at 569. Whether or not the discussion of contractual alimony in Jones is dicta, we find that the distinction between contractual and court ordered support is still significant and, as discussed, hold N.C. Gen.Stat. § 50-16.9 reflects only the policy with regard to court ordered support. Thus, the result in this case is no different than in Sethness and Riddle.
In this case, where the parties included specific events in the agreement to terminate alimony, agreed that the parties were to live separate and apart as if they were single and unmarried, and agreed the agreement would not become part of a divorce judgment, we hold defendant is bound by the terms of the agreement.
III. Conclusion
For the reasons discussed, we hold trial court did not err in denying defendant's motion for summary judgment and affirm the order of the trial court.
AFFIRMED.
Chief Judge McGEE and Judge CALABRIA concur.