STROUD, Judge.
 

 *669
 
 Defendant-husband appeals from a declaratory judgment rendering void for public policy reasons a 1993 Virginia separation agreement and property settlement agreement. The parties reconciled after signing the agreement, moved to North Carolina, and separated again in 2013. North Carolina's public policy allows property settlement agreements to
 
 *670
 
 survive reconciliation, so the Virginia Agreement is enforceable in North Carolina. We reverse the trial court's order and remand.
 

 I. Background
 

 Husband and Wife married in 1987 in Virginia and separated in 1991. In October 1993, the parties entered into a
 
 Stipulation and Agreement
 
 in Virginia governed by Virginia law ("the Agreement"). The Agreement was a comprehensive agreement with provisions addressing separation, spousal support, and property division. As relevant to this appeal, the Agreement made "full and complete settlement of all property rights between them and their right to equitable distribution pursuant to Virginia Code Annotated § 20-107.3" and provided that "from the time of execution of this Agreement neither Husband nor Wife shall have any interest of any kind or nature whatsoever in or to any of the marital property of the parties or the property of the other except as provided in this Agreement and Stipulation." The parties waived "any and all rights to equitable distribution or any monetary award pursuant to Virginia Code Annotated § 20-107.3." The Agreement divided the parties' property and also provided that "each party hereafter may own, have and enjoy, independently of any claim or right of the other party, all items of real and personal property
 
 now or hereafter belonging to him or her[.]
 
 " (Emphasis added.) Each party "forever waive[d], now and forever" any rights to "spousal support and maintenance or alimony" (original in all caps) from the other, except that Husband agreed to "immediately pay directly to Wife the sum of $25,000.00" as a "one time lump sum spousal support payment."
 

 The reconciliation provision of the Agreement is the primary subject of the issues on appeal:
 

 *782
 

 RECONCILIATION
 

 20. In the event of reconciliation and resumption of the marital relationship between the parties, the provisions of this Agreement for settlement of property rights, spousal support, debt payments and all other provisions shall nevertheless continue in full force and effect without abatement of any term or provisions hereof, except as otherwise provided by written agreement duly executed by each of the parties after the date of the reconciliation.
 

 In 1994, the parties reconciled, and, in 1997, they moved to North Carolina. In 2013, the parties separated for the second time. They never entered into any written agreement modifying or revoking the Agreement.
 

 *671
 
 On 30 January 2017, Wife filed a complaint seeking absolute divorce and equitable distribution, but not postseparation support or alimony. Husband filed an answer admitting the allegations relevant to absolute divorce but denying those relevant to equitable distribution, and he counterclaimed for a declaratory judgment that the Agreement "remains in full force and effect" and bars Wife's claim for equitable distribution. Regarding the Agreement, Husband alleged:
 

 6. On October 19, 1993, the parties entered into a
 
 Stipulation and Agreement
 

 (Attached as Exhibit A)
 

 which in pertinent part:
 

 a. provided for the distribution between the parties of all marital and separate property of the parties
 

 b. accepted the division as fair and reasonable and waived equitable distribution, postseparation support, and alimony claims
 

 c. stated that in the event of reconciliation this settlement shall continue in full force and effect unless decided otherwise and by a new written agreement formally entered
 

 d. at the time the parties executed said
 
 Agreement
 
 Defendant paid Plaintiff the required $25,000 lump sum postseparation support payment and each party initialed the amount paid[.]
 

 Wife replied to Husband's counterclaim and admitted the allegations of Paragraph 6 "to the extent that the parties entered into a Separation Agreement on October 19, 1993." She responded to the sub-parts of Paragraph 6, admitting that "the Separation Agreement provided for the distribution of all marital and separate property between the parties owned at the time of the Agreement" but alleging that the Agreement did not apply to "property acquired after the date of reconciliation, including active appreciation of the Defendant's separate property ...." Wife also admitted that Husband had paid her the $25,000.00 lump sum postseparation support payment. Wife also cross-claimed for a declaratory judgment that "the Separation Agreement entered into between the parties on October 19, 1993, does not bar future claims of equitable distribution and spousal support after reconciliation of the parties." She alleged that
 

 11. The Defendant through counsel is alleging that the property acquired after the date of reconciliation is not marital property and the Separation Agreement
 
 *672
 
 applies to after reconciliation acquired property which is contrary to our Equitable Distribution Statutes.
 

 12. The Plaintiff's position, supported by the law of this state, that the separation agreement divided the property that was in the parties' possession at the time of the entry of the agreement and that at any property acquired after date of reconciliation, including active appreciation, is subject to equitable distribution.
 

 Wife filed a motion to sever the equitable distribution claim from the absolute divorce claim, which was granted by the trial court. The trial court granted Wife's motion for summary judgment for absolute divorce and reserved the pending claims for equitable distribution and declaratory judgment. The material facts were not in dispute before the trial court, and the declaratory judgment claims presented only the legal question of the enforceability of the Agreement. The trial court requested the parties to submit briefs addressing these issues:
 

 (1) Whether the Stipulation and Agreement is still valid and enforceable under Virginia Law; if yes, then:
 

 *783
 
 (2) Whether paragraph 20 of the Stipulation and Agreement titled "Reconciliation" violates North Carolina Public Policy; if no, then:
 

 (3) Whether the Stipulation and Agreement completely bars further Equitable Distribution under Virginia law.
 

 After considering the arguments presented by both parties in their briefs, the trial court concluded in relevant part that: (1) the Agreement is valid under Virginia law; (2) application of Virginia law would be contrary to North Carolina's public policy; (3) the Agreement's reconciliation provision violates North Carolina public policy; and, (4) the Agreement does not apply to Wife's claim for equitable distribution. Upon motion by Husband, the trial court certified the declaratory judgment for immediate appeal under N.C. Gen. Stat. § 1A-1, Rule 54(b), and Husband timely appealed.
 

 II. Standard of Review
 

 The material facts are not contested, and the order on appeal presents only questions of law.
 
 [1]
 

 *673
 
 "In a declaratory judgment action where the trial court decides questions of fact, we review the challenged findings of fact and determine whether they are supported by competent evidence. If we determine that the challenged findings are supported by competent evidence, they are conclusive on appeal. We review the trial court's conclusions of law
 
 de novo
 
 ." We will therefore review the order's legal conclusion of the enforceability of the agreement
 
 de novo
 
 .
 

 Raymond v. Raymond
 
 , --- N.C. App. ----, ----,
 
 811 S.E.2d 168
 
 , 174 (2018) (citation and brackets omitted).
 

 III. Choice of Law
 

 The parties lived in Virginia in 1993 when they executed the Agreement, and the Agreement contained a choice of law provision:
 

 APPLICABLE LAW
 

 17. This Agreement shall be construed and governed in accordance with the laws of the Commonwealth of Virginia[.]
 

 The parties essentially agree that
 
 *674
 
 Virginia law governs the validity and interpretation of the Agreement, although Wife argues that the "Agreement is neither valid nor enforceable under Virginia law[,]" because North Carolina and Virginia law agree that "a choice of law provision in a contract will not be honored if the substantive law of the selected jurisdiction is contrary to the established public policy of the state where the contract is to be enforced." Thus, Wife concludes, "because enforcement of the Agreement in North Carolina is contrary to the established public policy of North Carolina, Virginia law will not permit the Agreement to be enforced here." But the question is not as complicated as Wife contends.
 

 The general rule is that things done in one sovereignty in pursuance of the laws of that sovereignty are regarded as valid and binding everywhere. North Carolina has long adhered to the general rule that
 
 lex loci contractus
 
 , the law of the place where the contract is executed governs the validity of the contract. ... However, foreign law or rights based thereon will not be given effect or enforced if opposed to the settled public policy of the forum.
 

 Muchmore v. Trask
 
 ,
 
 192 N.C. App. 635
 
 , 639-40,
 
 666 S.E.2d 667
 
 , 669-70 (2008) (citations, ellipsis, brackets, and quotation marks omitted). Virginia law governs the validity of the Agreement, which was the first question addressed in the briefs before the trial court. Virginia law also controls the interpretation of the Agreement, but the Agreement is enforceable in North Carolina only if it is not "opposed to the settled public policy" of this State.
 
 Id.
 
 at 640,
 
 666 S.E.2d at 670
 
 .
 

 IV. Public Policy
 

 Although Husband's brief breaks the questions presented by this appeal into various issues, there is only one question of law presented: whether the Agreement is unenforceable because the reconciliation provision
 
 *784
 
 is against the public policy of North Carolina. The trial court concluded that "[t]he agreement is valid under Virginia law." In addition to addressing the public policy issue, Wife argues that "[t]he Agreement is neither valid nor enforceable under Virginia law." But the
 
 validity
 
 of the Agreement under Virginia law is not at issue in this appeal. Husband did not challenge the trial court's conclusion that the Agreement was valid under Virginia law, and Wife has not cross-appealed.
 
 See
 

 McLeod v. Wal-Mart Stores, Inc.
 
 ,
 
 208 N.C. App. 555
 
 , 562,
 
 703 S.E.2d 471
 
 , 476 (2010) (finding failure to cross-appeal to preclude this Court from considering one of plaintiff's arguments). In addition, Wife has never denied that the Agreement was a valid and enforceable agreement under Virginia law in 1993 when it was executed, and her own pleadings acknowledge as much.
 
 [2]
 
 Therefore, whether this Agreement is valid under Virginia law is not before this Court, and we need consider only whether the Agreement is "opposed to the settled public policy of [North Carolina]."
 
 Muchmore
 
 ,
 
 192 N.C. App. at 640
 
 ,
 
 666 S.E.2d at 670
 
 .
 

 The trial court's order made the following findings of fact:
 

 15. The Agreement contemplated the parties would forever live separate and apart due to the "irreconcilability of their differences."
 

 16. The Agreement is integrated in that the separation of the parties was reciprocal consideration for the property provisions.
 

 *675
 
 17. The Reconciliation provision contained in Paragraph 20 is void as it violates North Carolina public policy in that separation and property settlement agreements are void unless the parties are living apart. Reconciliation voids the entire agreement.
 
 Stegall v. Stegall
 
 ,
 
 100 N.C. App. 398
 
 [
 
 397 S.E.2d 306
 
 ] (1990).
 

 18. The Reconciliation provision contained in Paragraph 20 is void as it violates public policy in that it discourages the reconciliation of the marital relationship.
 
 Patterson v. Patterson
 
 [
 
 242 N.C.App. 114
 
 ],
 
 774 S.E.2d 860
 
 (2015).
 

 19. The terms of the Agreement are void.
 
 Stegall v. Stegall,
 

 100 N.C. App. 398
 
 [
 
 397 S.E.2d 306
 
 ] (1990),
 
 Morrison v. Morrison
 
 ,
 
 102 N.C. App. 514
 
 [
 
 402 S.E.2d 855
 
 ] (1991).
 

 20. The choice of law provision with the Agreement states, "This Agreement shall be construed with the law of the Commonwealth of Virginia."
 

 21. Application of Virginia law would be contrary to the established public policy of North Carolina and should not be applied.
 

 22. The agreement is valid under Virginia law in the Commonwealth of Virginia recognizes that Separation and Property Settlement Agreements can remain intact even upon reconciliation of the parties.
 

 ....
 

 24. The Agreement has no application to Plaintiff's claim for Equitable Distribution.
 

 The trial court went on to conclude that "[a]pplication of Virginia law would be contrary to the established public policy of North Carolina[,]" and decreed that the Agreement "is an integrated agreement and the Reconciliation provision in paragraph 20 providing for survival past reconciliation is void as it violates North Carolina Public Policy, and is not binding in the State of North Carolina." Husband challenges findings of fact 15 through 19, 21, and 24, and conclusion of law 3 which is identical to finding of fact 21.
 

 Only finding 15 could be considered as a finding of fact, and it is supported by the evidence as it is based upon the language of the Agreement: "WHEREAS, marital difficulties have arisen between the parties, and the parties are now and have been separated, living separate and apart, with
 
 *676
 
 no possible chance of reconciliation since May 24,
 
 *785
 
 1991[.]" The remainder of the "findings" are actually conclusions of law, and we therefore review the challenged "findings"
 
 de novo
 
 .
 
 See
 

 Barnette v. Lowe's Home Ctrs., Inc.
 
 ,
 
 247 N.C. App. 1
 
 , 6,
 
 785 S.E.2d 161
 
 , 165 (2016) ("Regardless of how they may be labeled, we treat findings of fact as findings of fact and conclusions of law as conclusions of law for purposes of our review.").
 

 Husband argues that the trial court erred by holding the Agreement is void under North Carolina's public policy. Wife argues that the Agreement was an integrated separation agreement and property settlement agreement, and since it would violate North Carolina's public policy if reconciliation did not void the separation provisions of the Agreement, the reconciliation provision is also unenforceable; since the separation provisions were reciprocal consideration for the property settlement provisions, the entire Agreement is then void. The trial court agreed with Wife that the Agreement was an integrated agreement, based upon the language of the preamble, finding as follows:
 

 14. The First Paragraph of Page 3 of the Agreement specifically states
 

 "NOW, THEREFORE, for and in consideration of the promises and in consideration of the mutual covenants and agreements hereinafter contained, and other good and valuable consideration deemed adequate and sufficient at law ... without in any way attempting to facilitate divorce or separation, but rather in recognition of the prior existing separation of the parties, the irreconcilability of their differences, and in order to determine finally and settle their property rights ... the parties do hereby covenant and agree as follows:
 

 SEPARATE LIVES
 

 1. The parties hereafter shall live separate and apart from each other ...."
 

 We first note that the parties' briefs rely primarily upon North Carolina law for the distinction between a property settlement agreement and a pure separation agreement how to determine if an agreement with both types of provisions is an integrated agreement.
 
 See
 

 Morrison v. Morrison
 
 ,
 
 102 N.C. App. 514
 
 , 519,
 
 402 S.E.2d 855
 
 , 858 (1991) ("Whether the executory provisions of a property settlement agreement are rescinded upon resumption of marital relations depends on whether the property settlement is negotiated in reciprocal consideration for the separation agreement. This is so whether the
 
 *677
 
 property settlement and the separation agreement are contained in a single document or separate documents. If the property settlement is negotiated as reciprocal consideration for the separation agreement, the agreements are deemed integrated and the resumption of marital relations will terminate the executory provisions of the property settlement agreement. If not in reciprocal consideration, the provisions of the property settlement are deemed separate and the resumption of marital relations will not affect either the executed or executory provisions of the property settlement agreement." (quotation marks omitted) ). But in accord with the choice of law provision of the Agreement, we must interpret the Agreement under Virginia law, and Virginia law does not have case law addressing the concepts of "integrated" separation and property settlement agreements in exactly the same way as North Carolina. Under Virginia law, we must interpret the Agreement as a contract:
 

 Property settlement agreements are contracts; therefore, we must apply the same rules of interpretation applicable to contracts generally. We state at the outset our belief that the property settlement agreement is unambiguous; thus, its meaning and effect are questions of law to be determined by the court. On review we are not bound by the trial court's construction of the contract provisions here in issue.
 

 In construing contracts, ordinary words are to be given their ordinary meaning. The Supreme Court of Virginia restated the applicable principles in
 
 Berry v. Klinger
 
 ,
 
 225 Va. 201
 
 , 208,
 
 300 S.E.2d 792
 
 , 796 (1983) :
 

 We adhere to the plain meaning rule in Virginia: Where an agreement is complete on its face, is plain and unambiguous in its terms, the court is not at liberty to search for its meaning beyond the instrument itself. This is so because the writing is the repository of the final agreement of the parties.
 

 *786
 
 The court must give effect to all of the language of a contract if its parts can be read together without conflict. Where possible, meaning must be given to every clause. The contract must be read as a single document. Its meaning is to be gathered from all its associated parts assembled as the unitary expression of the agreement of the parties. However inartfully it may have been drawn, the court cannot make a new contract for the parties, but must construe its language as written.
 

 *678
 

 Tiffany v. Tiffany
 
 ,
 
 1 Va.App. 11
 
 ,
 
 332 S.E.2d 796
 
 , 799 (1985) (citations, quotation marks, brackets, ellipsis and parentheticals omitted).
 

 The trial court's order focused on the language of the Preamble, as quoted above in finding 14. But the Agreement includes other relevant provisions which must be given effect "if its parts can be read together without conflict."
 

 Id.
 

 The Agreement includes specific provisions regarding severability of invalid provisions:
 

 SEVERABILITY OF PROVISIONS
 

 12. If any provision of this Agreement shall be deemed by a court of competent jurisdiction to be invalid, the remainder of this Agreement shall remain in full force and effect.
 

 Under Virginia law, we must give "meaning ... to every clause. The contract must be read as a single document."
 

 Id.
 

 The trial court's order focused on general language from the Preamble but ignored the far more specific provision of severability. The Preamble simply states the consideration for the Agreement and even notes that the Agreement is not "in any way attempting to facilitate divorce or separation[.]" The Preamble language in finding 14 and the Severability provision are not in conflict. Even if the reconciliation provision is "invalid" because it is against North Carolina public policy as applied to the "pure separation" provisions of the Agreement, the remainder of the Agreement regarding property settlement is still enforceable, according to the Severability of Provisions language in the Agreement. And even under North Carolina law-which the trial court used instead of Virginia law-the agreement to separate was not "reciprocal consideration" for the property settlement, since the Agreement has a specific provision that the Agreement's provisions are severable.
 
 See
 

 Hayes v. Hayes
 
 ,
 
 100 N.C. App. 138
 
 , 147,
 
 394 S.E.2d 675
 
 , 680 (1990) ("[W]here the parties include unequivocal integration or non-integration clauses in the agreement, this language governs.").
 

 After
 
 de novo
 
 review of the challenged conclusions of law, including the cases cited by the trial court to support its conclusions, the conclusions are not supported by law. The trial court's order included references to several specific cases, so we will address those. We first note that the parties were separated when they signed the Agreement, so the Agreement would not violate North Carolina's public policy as to entering into a separation agreement without physical separation, which is one of the issues discussed in
 
 Stegall
 
 ,
 
 100 N.C. App. 398
 
 , 403,
 
 397 S.E.2d 306
 
 , 309 (1990), and cited as support for finding 17. In finding 17, the trial court concluded that "[t]he Reconciliation provision contained in
 
 *679
 
 Paragraph 20 is void as it violates North Carolina public policy in that separation and property settlement agreements are void unless the parties are living apart. Reconciliation voids the entire agreement.
 
 Stegall v. Stegall
 
 ,
 
 100 N.C. App. 398
 
 ,
 
 397 S.E.2d 306
 
 (1990)." But
 
 Stegall
 
 does not hold that
 
 reconciliation
 
 necessarily voids a property settlement agreement, and it does not address the effect of a reconciliation provision in an agreement at all, since the agreement in
 
 Stegall
 
 did not have this provision.
 
 See
 

 id.
 

 at 411
 
 ,
 
 397 S.E.2d at 313
 
 .
 

 The relevance of the second case noted in the findings is also unclear. In
 
 Patterson
 
 , this Court held that the alimony provisions of a separation agreement which did not provide for termination of alimony payments upon the wife's cohabitation were not against public policy and were enforceable.
 
 242 N.C. App. 114
 
 ,
 
 774 S.E.2d 860
 
 (2015). Although
 
 N.C. Gen. Stat. § 50-16.9
 
 provides for termination of
 
 court-ordered
 
 alimony upon cohabitation by the dependent spouse, parties are free to enter into a contract providing otherwise.
 
 Patterson
 
 notes that a provision is against public policy only if the
 
 *787
 
 agreement by its own terms promotes an objection against public policy:
 

 Moreover, as this Court pointed out in
 
 Sethness
 
 , the clear implication of cases where separation agreements were found to be void as against public policy and
 
 N.C. Gen. Stat. § 52-10.1
 
 is that such agreements may not by their own terms promote objectives (i.e.: divorce, termination of parental rights) which are offensive to public policy.
 

 Patterson
 
 ,
 
 242 N.C. App. at 118
 
 ,
 
 774 S.E.2d at 862-63
 
 (brackets, ellipsis, and quotation marks omitted).
 

 The trial court cites to
 
 Morrison v. Morrison
 
 ,
 
 102 N.C. App. 514
 
 ,
 
 402 S.E.2d 855
 
 , in finding 19, and concluded, "The terms of the Agreement are void." The primary focus of
 
 Morrison
 
 is the distinction between a separation agreement and a property settlement agreement, and where an agreement includes both types of provisions, how to determine if the agreement is integrated.
 

 Id.
 

 As noted above, we must construe the Agreement under Virginia law, but as to North Carolina's public policy,
 
 Morrison
 
 also notes that reconciliation provisions in agreements with provisions regarding both separation and property rights are
 
 not
 
 against public policy:
 

 We therefore reject the suggestion that all agreements, whether in one document or two, relating to support and property rights are reciprocal as a matter of law. To so hold would prohibit the parties from entering
 
 *680
 
 into contracts which do not violate law or public policy.
 
 Because contracts providing that a reconciliation will not affect the terms of a property settlement are not contrary to law or public policy, adopting the rule that all agreements relating to support and property rights are reciprocal as a matter of law would impermissibly interfere with the parties' freedom of contract rights.
 
 On the other hand, contracts which provide that reconciliation will not affect the terms of a separation agreement violate the policy behind separation agreements and are therefore void.
 

 Id.
 
 at 519-20,
 
 402 S.E.2d at 858-59
 
 (emphasis added) (citations omitted).
 

 In
 
 Porter v. Porter
 
 , this Court analyzed a North Carolina separation agreement that contained a reconciliation provision similar to the one at issue in the Agreement:
 

 13. In the event of the reconciliation and resumption of the marital relationship between the parties, the provisions of this agreement for settlement of property rights shall nevertheless continue in full force and effect without abatement of any term or provision thereof, except as otherwise provided by written agreement duly executed by each of the parties after the date of reconciliation.
 

 Thus, according to the express terms of the Agreement, and with full information as to the legal rights of equitable distribution and distributive award contained in North Carolina General Statute Section 50 20, husband and wife agreed that each would relinquish any and all claims to any and all real or personal property owned by the other party or that said party may hereafter own. In other words, the parties exercised the broad contractual freedom afforded them under North Carolina law by entering into their 1988 Agreement and foregoing their right to seek equitable distribution of the marital estate. Additionally, the parties specifically contemplated and agreed that, were they to reconcile and resume the marital relationship after entering into the Agreement in 1988, the provisions of the Agreement regarding settlement of property rights shall continue in full force and effect without abatement of any
 
 *681
 
 term or provision thereof. Thus, the Agreement makes the parties' intent clear that the provisions regarding ownership of property acquired after husband and wife entered into the 1988 Agreement were to remain unaffected by any later reconciliation and resumption of the marital relationship. Accordingly, we conclude that the trial court erred by ordering equitable distribution of the property in contravention of the express terms of the now-court-ordered Agreement. Therefore, we vacate the trial court's order for equitable distribution and remand with instructions to distribute the property in accordance with the terms of the parties' Agreement, which provided that any property not specifically provided for under this Agreement shall be
 
 *788
 
 deemed to be separate property to be solely owned by the party holding title to the same.
 

 Porter v. Porter
 
 ,
 
 217 N.C. App. 629
 
 , 633-34,
 
 720 S.E.2d 778
 
 , 780-81 (2011) (citations, quotation marks, brackets, and ellipsis omitted).
 

 Here, even the reconciliation provision of the Agreement would offend North Carolina's public policy if applied to the "pure separation" provisions of the Agreement; the "pure separation" provisions were not reciprocal consideration for the property settlement provisions. The parties agreed that the provisions of the Agreement are severable, and enforcement of the property settlement provisions of the Agreement does not conflict with North Carolina's public policy. Therefore, the trial court's finding and conclusion stating that "[a]pplication of Virginia law would be contrary to the established public policy of North Carolina and should not be applied" is in error.
 

 V. Conclusion
 

 The reconciliation provision of the Agreement does not violate North Carolina's public policy as applied to the property settlement provisions of the Agreement. Both parties waived any rights to equitable distribution in the Agreement, so the trial court erred by concluding that Wife's equitable distribution claim is not affected by the Agreement. We reverse the trial court's order and remand for further proceedings consistent with this opinion.
 

 REVERSED AND REMANDED.
 

 Judges DILLON and BERGER concur.
 

 [1]
 

 Although Husband's brief challenges several paragraphs of the order labeled as "findings of fact" as "not supported by competent evidence," the findings are actually conclusions of law, and we will review them accordingly.
 

 [2]
 

 Wife's pleadings below also did not raise the issue of unenforceability based upon violation of North Carolina's public policy or the validity of the Agreement, but instead alleged that the Agreement did not apply to property acquired after the reconciliation of the parties. Her defense in her answer was based upon interpretation of the Agreement. But when the trial court heard the declaratory judgment claims, both parties addressed the public policy argument, and Wife abandoned her contention based upon her interpretation of the Agreement as not applying to property acquired after the date of the Agreement.