IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA24-544

Filed 2 July 2025

Ashe County, No. 23CVD000043-040

VICKIE LYNN JONES, Plaintiff,

v.

LESTER GREGORY JONES (Administrator), FULTON JONES, CATHERINE ELLER, DILLARD WAYNE JONES, PATRICIA BOONE, and RONNIE (MATT) JONES, Defendants.

Appeal by plaintiff from order entered 12 October 2023 by Judge Robert J. Crumpton in District Court, Ashe County. Heard in the Court of Appeals 5 November 2024.

*Epperson Law Group, PLLC, by Lauren E. R. Watkins, for plaintiff-appellant.*

*Anné C. Wright for defendants-appellees.*

STROUD, Judge.

Plaintiff appeals the trial court's order denying her claim raised in a complaint filed in District Court requesting that the District Court rule on the existence of a separation agreement as stated in her attached "Petition to declare separation agreement void[;] remove the administrator, Lester Gregory Jone[s], and appoint Vickie Lynn Jones as administrator." (Capitalization altered.) Plaintiff contends the trial court "erred by holding that the separation agreement entered into by Plaintiff[ ] and the decedent was valid" and "by holding that . . . Plaintiff[ ] and the decedent

never modified their separation agreement in writing." In the separation agreement, Plaintiff and the decedent agreed that if they reconciled, "the terms of this agreement will remain in effect unless the parties revoke it in writing." Plaintiff and the decedent never revoked or modified the agreement in writing, so the trial court did not err by entering a declaratory judgment that the agreement is valid. We affirm the trial court's order.

## I.  Background

Harold Jones ("Decedent") and Plaintiff were married on 28 June 2002. Plaintiff and Decedent separated in April 2018. On 3 April 2018, Plaintiff and Decedent entered into a written separation agreement ("the Agreement"). Relevant portions of the Agreement state:

> 20. This agreement contains the entire agreement between the parties about their relationship with each other. It replaces any earlier written or oral agreement between the parties.
>
> 21. Should any portion of this agreement be held by a court of law to be invalid, unenforceable, or void, such holding will not have the effect of invalidating or voiding the remainder of this agreement, and the parties agree that the portion so held to be invalid, unenforceable, or void will be deemed amended, reduced in scope, or otherwise stricken only to the extent required for purposes of validity and enforcement in the jurisdiction of such holding.
>
> 22. The parties may only amend this agreement in writing after the parties have obtained legal advice on the changes.
>
> . . . .
>
> 28. This agreement will be binding upon and will enure to

the benefit of the parties, their respective heir, executors, administrators, and assigns.

29. [I]f the parties reconcile the terms of this agreement will remain in effect unless the parties revoke it in writing.

30. This agreement may only be terminated or amended by the parties in writing signed by both of them.

On or about 20 July 2021, Decedent died intestate. On 26 July 2021, Lester Gregory Jones, one of Decedent's siblings, applied to be appointed as Administrator of Decedent's estate and he was appointed as Administrator of the estate. On 17 February 2023, Plaintiff filed a Petition in the estate matter, File 22 E 323, entitled "Petition to declare separation agreement void[;] remove the administrator, Lester Gregory Jone[s], and appoint [Plaintiff] as administrator." On the same day, Plaintiff also filed a complaint in the District Court, Ashe County, against the Administrator and Decedent's other heirs requesting that the District Court declare the Agreement void, or in the alternative, that Plaintiff recover the monies owed to her under the Agreement, since the Clerk "could only hear and determine if the Administrator should be removed and not the underlying matters that would be necessary to make that determination" and "the attorneys for all parties agreed that it would be in the best interests of all concerned and the most cost efficient for the matters raised in the Petition, excepting the removal of the Administrator, be heard in District Court[.]"

The complaint alleged that Plaintiff, as Decedent's wife, should be named Administrator of Decedent's estate as the Agreement "had been rendered null and

void and was no longer of any force and effect" when Plaintiff and Decedent reconciled after execution of the Agreement. In support of her argument that she and Decedent had reconciled, Plaintiff alleged "it was public knowledge that . . . [Plaintiff] and Decedent had reconciled their relationship and were living together as husband and wife" and identified a document in which Decedent identified Plaintiff as "wife," among other reasons. Plaintiff also argued Plaintiff and Decedent "executed a Mortgage Modification Agreement" in 2021 which was written, signed, and executed with the requisite formalities under North Carolina General Statute Section 52-10.1. Plaintiff argued this document "is clear evidence that the parties waived the provisions of the previously executed" Agreement.

Defendants filed "Motions to Dismiss, Answer, and Counterclaim" on 3 March 2023. The motions to dismiss were under Rule 12(b)(6) and North Carolina General Statute Section 6-21.5 for failing to allege a justiciable issue; the answer admitted some allegations but denied Plaintiff's allegations regarding reconciliation or modification of the Agreement. Defendants made a counterclaim for a declaratory judgment under North Carolina General Statute Section 1-253 seeking to enforce the Agreement, which granted sole ownership of the real property owned by Plaintiff and Decedent to Decedent and waived Plaintiff's inheritance rights as a surviving spouse and her right to administer Decedent's estate.

The matter was heard on 9 October 2023. On 12 October 2023, the trial court entered an order under the Declaratory Judgment Act, North Carolina General

Statute Section 1-253, and North Carolina General Statute Section 7A-242. The order included findings of fact regarding Plaintiff's and Decedent's marriage, separation, the relevant provisions of the Agreement, and other matters. The trial court found that even if Plaintiff and Decedent had reconciled, "there was no written modification of" the Agreement and that the execution of a loan document was "not a modification of the [A]greement[.]" The trial court concluded as follows:

> 1. The . . . [A]greement entered into evidence as Plaintiff's exhibit 1 is and remains the . . . [A]greement between . . . Plaintiff and Decedent.
>
> 2. This matter shall be remanded to the Ashe County Clerk of Superior Court to rule on . . . Defendants' Rule 70 motion and all other proceedings.

On 13 November 2023, Plaintiff timely filed written notice of appeal of the order.

## II. Jurisdiction of the District Court

We first note under North Carolina General Statute Section 28A-2-4, "[t]he clerks of superior court of this State, as ex officio judges of probate, shall have original jurisdiction of estate proceedings. Except as provided in subdivision (4) of this subsection, the jurisdiction of the clerk of superior court is exclusive." N.C. Gen. Stat. § 28A-2-4 (2023). But under North Carolina General Statute Section 7A-244,

> [t]he district court division is the proper division without regard to the amount in controversy, for the trial of civil actions and proceedings for annulment, divorce, equitable distribution of property, alimony, child support, child custody *and the enforcement of separation or property settlement agreements between spouses, or recovery for the breach thereof.*

N.C. Gen. Stat. § 7A-244 (2023) (emphasis added). The complaint filed in the district court division was solely

> for an [o]rder declaring the . . . Agreement between . . . [D]ecedent and . . . Plaintiff be declared void, in whole or in part and[/]or the recovery of monies owed to Plaintiff pursuant to said agreement and the return of her separate property and not part of the Estate of her deceased husband.

The removal and appointment of the Administrator of the estate was specifically excluded from the complaint filed in District Court. Defendants' counterclaim sought a declaratory judgment, and the trial court entered a declaratory judgment as to the validity of the Agreement. Thus, jurisdiction was proper in the District Court under North Carolina General Statute Sections 7A-244 and 1-253. *See id*; *see also* N.C. Gen. Stat. § 1-253 (2023). We note only the issue involving the validity of the Agreement was properly before the District Court and this is the only issue on appeal.

### III.   Validity of the Agreement

Plaintiff contends (1) "the trial court erred by holding that the . . . [A]greement entered into by Plaintiff[ ] and . . . Decedent was valid" and (2) "the trial court erred by holding that . . . Plaintiff[ ] and . . . Decedent never modified their . . . [A]greement in writing." (Capitalization altered.) We disagree.

"The standard of review on appeal from a judgment entered after a non-jury trial is whether there is competent evidence to support the trial court's findings of fact and whether the findings support the conclusions of law and ensuing judgment."

*In re Archibald*, 183 N.C. App. 274, 276, 644 S.E.2d 264, 266 (2007) (citations and quotation marks omitted).

> Questions relating to the construction and effect of separation agreements between a husband and wife are ordinarily determined by the same rules which govern the interpretation of contracts generally. Whenever a court is called upon to interpret a contract its primary purpose is to ascertain the intention of the parties at the moment of its execution.
>
> The heart of a contract is the intention of the parties, which is to be ascertained from the expressions used, the subject matter, the end in view, the purpose sought, and the situation of the parties at the time. When a contract is in writing and free from any ambiguity which would require resort to extrinsic evidence, or the consideration of disputed fact, the intention of the parties is a question of law. The court determines the effect of their agreement by declaring its legal meaning.

*Lane v. Scarborough*, 284 N.C. 407, 409-10, 200 S.E.2d 622, 624 (1973) (citations and quotation marks omitted).

**A. Trial Court's Determination the Agreement was Valid**

Plaintiff first argues the trial court erred in determining the Agreement was still valid. Plaintiff contends (1) "the trial court's finding that the . . . [A]greement was valid even though Plaintiff[ ] and . . . [D]ecedent had reconciled, and such a reconciliation substantially defeated the purpose of the . . . [A]greement is not based on competent evidence[;]" and (2) "the trial court's finding that the . . . [A]greement was valid even though . . . [D]ecedent's actions constituted a material breach and rescission of the . . . [A]greement is not based on competent evidence." (Capitalization

altered.) We disagree.

## 1. *Reconciliation of the Marriage*

Although Plaintiff's first argument is that the trial court's "finding" that the Agreement was valid was "not based on competent evidence," she does not challenge any of the trial court's findings of fact as unsupported by the evidence. Therefore, the trial court's findings of fact are binding on appeal. *See Isom v. Duncan*, 279 N.C. App. 171, 172, 864 S.E.2d 831, 834 (2021) ("When a finding of fact is unchallenged, it is binding on appeal."). In reality, Plaintiff's argument is that the trial court's findings of fact do not support its conclusion of law that the Agreement had not been rescinded by their reconciliation. We review the trial court's conclusions of law *de novo*. *See Diener v. Brown*, 290 N.C. App. 273, 276, 892 S.E.2d 212, 214 (2023) ("A trial court's conclusions of law are reviewable de novo.").

In this argument, Plaintiff largely argues the facts supporting her claim that she and Decedent had reconciled after the Agreement was signed. As to Plaintiff's claims that she and Decedent had reconciled before his death, the trial court found:

> 12. There is conflicting evidence as to whether . . . Plaintiff and Decedent reconciled after signing the . . . [A]greement.
>
> . . . .
>
> 14. Regardless of whether there was a reconciliation, there was no written modification of the . . . [A]greement.

The trial court's finding is correct: there was conflicting evidence as to reconciliation, and normally, findings must resolve any issues of fact raised by the

evidence. *In re L.M.B.*, 284 N.C. App. 41, 52, 875 S.E.2d 544, 551 (2022) ("Under Rule 52, the trial court is required to do three things in writing: (1) To find the facts on all issues of fact joined on the pleadings[.]" (citation and quotation marks omitted)). But here, as the trial court also found, whether Plaintiff and Decedent had actually reconciled was not relevant to the legal issue presented.

We will assume for purposes of this opinion that everything Plaintiff alleges about the reconciliation is true. But even if the marriage was reconciled, the Agreement had a provision stating "if the parties reconcile the terms of this agreement will remain in effect unless the [p]arties revoke it in writing." Plaintiff contends that the reconciliation operates as a revocation of the Agreement, citing *Stegall v. Stegall*, 100 N.C. App. 398, 397 S.E.2d 306 (1990), and *Fletcher v. Fletcher*, 123 N.C. App. 744, 474 S.E.2d 802 (1996), in support of this argument.

In *Stegall*, the parties entered into a separation agreement in 1983 but then executed a new separation agreement in 1988. 100 N.C. App. at 402, 397 S.E.2d at 308. The 1988 agreement "provide[d] for the distribution of the parties' property" but made no reference to the 1983 agreement. *Id*. This Court discussed

> whether the 1983 separation agreement is itself an enforceable contract in the event that the 1988 agreement is declared void. On this point [the] defendant first argues that in determining the intended effects of the 1983 separation agreement it is necessary to separate the property settlement provisions from the marital/support components of the separation agreement. It is his contention that even if the four-year reconciliation voided the marital/support provisions of the agreement, the

property provisions of the document are still in effect.

*Id*. at 402-03, 397 S.E.2d at 308.  This Court concluded the parties had reconciled after the 1983 agreement and "h[e]ld that any executory provisions of the 1983 separation agreement were terminated upon the parties' reconciliation."  *Id*. at 411, 397 S.E.2d at 313.  However, in discussing how the case in *Stegall* was different from this Court's opinion in *In re Tucci*, 94 N.C. App. 428, 380 S.E.2d 782 (1989), we stated the

> defendant's reliance on [*Tucci*] is misplaced for another reason. In *Tucci*, the separation agreement in question contained the following paragraph: "should at any time in the future the parties resume marital cohabitation in any respect the provisions of this Separation Agreement and Property Settlement are and shall remain valid and fully enforceable, and of full legal force and effect." *Tucci,* 94 N.C.App. at 430, 380 S.E.2d at 783. The Stegalls' document, in contrast, contains no such clause and states that as consideration for the separation agreement the parties "propose to continue to live so separate and apart from one another."

*Id*. at 410, 397 S.E.2d at 312-13 (citations, ellipses, and brackets omitted).  While Plaintiff attempts to argue the alleged reconciliation voided the entire Agreement without mentioning the reconciliation provision of the Agreement, we cannot overlook that provision in our discussion of the Agreement, and *Stegall* is inapposite to this case.  *See S.N.R. Mgmt. Corp. v. Danube Partners 141, LLC*, 189 N.C. App. 601, 620, 659 S.E.2d 442, 455 (2008) ("A court must construe a contract as it is written and give effect to every part and provision whenever possible." (citation and quotation marks

omitted)).

In *Fletcher*, the parties executed a separation agreement in 1993 and the plaintiff later sued for breach of the separation agreement alleging that the parties had reconciled and asked "the court [to] rescind the agreement and effect an equitable distribution of the marital property." 123 N.C. App. at 745-46, 474 S.E.2d at 803-04. This Court discussed in detail whether the parties had reconciled and concluded they had not. *See id.* at 751, 474 S.E.2d at 807. This Court then rejected the plaintiff's argument that the defendant "materially breached" the agreement since any alleged breaches were not material. *Id.* at 751-52, 474 S.E.2d at 807-08. There is no mention in *Fletcher* of a provision in the parties' separation agreement that reconciliation would not affect the separation agreement.

While Plaintiff argues the alleged reconciliation voided the Agreement entirely, this Court's discussion in *Bradshaw v. Bradshaw* is instructive on the effect of the reconciliation provision in the Agreement and contains a helpful summary of relevant caselaw. In *Bradshaw*, the husband and wife "married in 1987 in Virginia and separated in 1991." 264 N.C. App. 669, 670, 826 S.E.2d 779, 781 (2019). The husband and wife "entered into a Stipulation and Agreement in Virginia governed by Virginia law" and the agreement had "provisions addressing separation, spousal support, and property division." *Id.* The agreement also had a similar provision as to reconciliation as this case, which stated:

> In the event of reconciliation and resumption of the marital

relationship between the parties, the provisions of this [a]greement for settlement of property rights, spousal support, debt payments and all other provisions shall nevertheless continue in full force and effect without abatement of any term or provisions hereof, except as otherwise provided by written agreement duly executed by each of the parties after the date of the reconciliation.

*Id*. at 670, 826 S.E.2d at 782. After entering the agreement the parties reconciled, moved to North Carolina, and later separated again; the parties "never entered into any written agreement modifying or revoking the [a]greement." *Id*. The wife

filed a complaint seeking absolute divorce and equitable distribution, but not postseparation support or alimony. [The h]usband filed an answer admitting the allegations relevant to absolute divorce but denying those relevant to equitable distribution, and he counterclaimed for a declaratory judgment that the [a]greement "remains in full force and effect" and bars [the w]ife's claim for equitable distribution.

*Id*. at 671, 826 S.E.2d at 782. The trial court concluded "(1) the [a]greement is valid under Virginia law; (2) application of Virginia law would be contrary to North Carolina's public policy; (3) the [a]greement's reconciliation provision violates North Carolina public policy; and, (4) the [a]greement does not apply to [the w]ife's claim for equitable distribution." *Id*. at 672, 826 S.E.2d at 783.

On appeal, as the agreement was entered in Virginia and had a choice of law provision indicating Virginia law would apply to the validity and interpretation of the agreement, this Court first addressed whether this choice of law provision was valid. *See id*. at 673-74, 826 S.E.2d at 783. However, we then recognized "the [a]greement

is enforceable in North Carolina only if it is not 'opposed to the settled public policy' of this State" and thus addressed "whether the [a]greement is unenforceable because the reconciliation provision is against public policy of North Carolina." *Id.* at 674, 826 S.E.2d at 783-84. We recognize the case here involves exclusively a North Carolina agreement and Plaintiff does not argue the Agreement is barred by public policy, but Plaintiff essentially contends that since she and Decedent reconciled, the Agreement must be void since reconciliation defeats the purpose of the Agreement. In *Bradshaw*, "the validity of the [a]greement under Virginia law is not at issue in this appeal. . . . [the w]ife has never denied that the [a]greement was a valid and enforceable agreement under Virginia law in 1993 when it was executed[.]" *Id.* at 674, 826 S.E.2d at 784. And since *Bradshaw* discusses the relevant law as to separation and property settlement agreements in the context of a reconciliation provision, it is useful to our determination.

The parties and the trial court here only refer to the Agreement as a separation agreement, but it includes provisions addressing both separation and property settlement. The portions of the Agreement in question here are property settlement provisions. *See Morrison v. Morrison*, 102 N.C. App. 514, 518-19, 402 S.E.2d 855, 858 (1991) ("A separation agreement is defined as a contract between spouses providing for marital support rights and is executed while the parties are separated or are planning to separate immediately. The heart of a separation agreement is the parties' intention and agreement to live separate and apart forever. A property settlement

agreement provides for a division of real and personal property held by the spouses. The parties may enter a property settlement at any time, regardless of whether they contemplate separation or divorce. A property settlement contains provisions which might with equal propriety have been made had no separation been contemplated." (citations, quotation marks, ellipses, and brackets omitted)). The Agreement releases Plaintiff and Decedent from equitable distribution claims, estate and testamentary rights in each other's property, and pension rights in a variety of retirement accounts. While the Agreement also provides for support payments to Plaintiff, most of the Agreement, and the portions relevant to this case, involves settling the property rights of Plaintiff and Decedent. They could have entered into a property settlement agreement with the same terms as to their real property and rights of inheritance even if they had never separated. *See id.* ("The parties may enter a property settlement at any time, regardless of whether they contemplate separation or divorce.").

*Bradshaw* also discussed "the distinction between a property settlement agreement and a pure separation agreement [and] how to determine if an agreement with both types of provisions is an integrated agreement[,]" stating:

> Whether the executory provisions of a property settlement agreement are rescinded upon resumption of marital relations depends on whether the property settlement is negotiated in reciprocal consideration for the separation agreement. This is so whether the property settlement and the separation agreement are contained in a single document or separate documents. If the property

settlement is negotiated as reciprocal consideration for the separation agreements, the agreements are deemed integrated and the resumption of marital relations will terminate the executory provisions of the property settlement agreement. If not in reciprocal consideration, the provisions of the property settlement are deemed separate and the resumption of marital relations will not affect either the executed or executory provisions of the property settlement agreement.

*Bradshaw*, 264 N.C. App. at 676-77, 826 S.E.2d at 785 (citing *Morrison*, 102 N.C. App. at 519, 402 S.E.2d at 858).  After reviewing Virginia's law on contracts, we noted

even under North Carolina law—which the trial court used instead of Virginia law—the agreement to separate was not "reciprocal consideration" for the property settlement, since the [a]greement has a specific provision that the [a]greement's provisions are severable. *See Hayes v. Hayes*, 100 N.C. App. 138, 147, 394 S.E.2d 675, 680 (1990) ("Where the parties include unequivocal integration or non-integration clauses in the agreement, this language governs.").

*Id.* at 678, 826 S.E.2d at 786 (brackets omitted).  We specifically discussed our earlier decision in *Stegall*, and stated "*Stegall* does not hold that *reconciliation* necessarily voids a property settlement agreement, and it does not address the effect of a reconciliation provision in an agreement at all, since the agreement in *Stegall* did not have this provision."  *Id.* at 679, 826 S.E.2d at 786 (emphasis in original) (citation omitted).

We then explained *Morrison* in further detail in relation to the trial court's finding that "[t]he terms of the agreement are void[:]"

the primary focus of *Morrison* is the distinction between a

separation agreement and a property settlement agreement, and where an agreement includes both types of provisions, how to determine if the agreement is integrated. *Id.* As noted above, we must construe the [a]greement under Virginia law, but as to North Carolina's public policy, *Morrison* also notes that reconciliation provisions in agreements with provisions regarding both separation and property rights are *not* against public policy:

> We therefore reject the suggestion that all agreements, whether in one document or two, relating to support and property rights are reciprocal as a matter of law. To so hold would prohibit the parties from entering into contracts which do not violate law or public policy. *Because contracts providing that a reconciliation will not affect the terms of a property settlement are not contrary to law or public policy, adopting the rule that all agreements relating to support and property rights are reciprocal as a matter of law would impermissibly interfere with the parties' freedom of contract rights.* On the other hand, contracts which provide that reconciliation will not affect the terms of a separation agreement violate the policy behind separation agreements and are therefore void.

*Id.* at 679-80, 826 S.E.2d at 787 (emphasis in original). Finally, after discussing

*Porter*, where a separation agreement had a reconciliation provision similar to the

one in this case and in *Bradshaw*, we concluded:

> even the reconciliation provision of the [a]greement would offend North Carolina's public policy if applied to the "pure separation" provisions of the [a]greement; the "pure separation" provisions were not reciprocal consideration for the property settlement provisions. The parties agreed that the provisions of the [a]greement are severable, and enforcement of the property settlement provisions of the [a]greement does not conflict with North Carolina's public policy.

*Id*. at 681, 826 S.E.2d at 788.

The case here is similar to *Bradshaw*. The Agreement has a similar reconciliation provision that "if the parties reconcile the terms of this [A]greement will remain in effect unless the [p]arties revoke it in writing." And like in *Bradshaw*, "the Agreement has a specific provision that the Agreement's provisions are severable[:]"

> Should any portion of this agreement be held by a court of law to be invalid, unenforceable, or void, such holding will not have the effect of invalidating or voiding the remainder of this agreement, and the parties agree that the portion so held to be invalid, unenforceable, or void will be deemed amended, reduced in scope, or otherwise stricken only to the extent required for purposes of validity and enforcement in the jurisdiction of such holding.

*Id*. at 678, 826 S.E.2d at 786. Thus, the Agreement is not integrated under *Morrison*. *See Morrison*, 102 N.C. App. at 520, 402 S.E.2d at 859 ("Whether the property settlement agreement was negotiated as reciprocal consideration for the separation agreement "requires a determination of the intent of the parties regarding integration or non-integration of" its provisions. *Hayes v. Hayes*, 100 N.C.App. 138, 147, 394 S.E.2d 675, 680 (1990). There is a presumption that the provisions of a marital agreement are separable and the burden of proof is on the party claiming that the agreement is integrated. *Id*. 'This presumption of separability prevails unless the party with the burden to rebut the presumption proves by a preponderance of the evidence that an integrated agreement was in fact intended by the parties.' *Id*.

'However, where the parties include unequivocal integration or non-integration clauses in the agreement, this language governs.'").

And while Plaintiff does not argue the Agreement here is void for public policy reasons specifically, her argument relies mostly on the facts alleging Plaintiff and Decedent had reconciled, and since the facts show they reconciled, the Agreement cannot be valid since the actions of Plaintiff and Decedent "created a situation where the . . . [A]greement was void." But other than citing the general proposition in *Stegall* and *Fletcher* that reconciliation voids a separation agreement, Plaintiff does not demonstrate why the entire Agreement here would be void when it is not a pure separation agreement and it has reconciliation and severability provisions. Plaintiff and Decedent specifically addressed estate and property rights, stated reconciliation would not affect the Agreement, and agreed the Agreement could only be modified in a writing, indicating Plaintiff and Decedent contemplated this situation and intended the Agreement remain in effect. We cannot say the purpose of the Agreement has been defeated when the Agreement is valid under North Carolina law and Plaintiff and Decedent specifically addressed this situation.

The trial court did not err by concluding the Agreement was still valid even if Plaintiff and Decedent had reconciled. This argument is overruled.

### 2. *Rescission of the Agreement*

Plaintiff next argues "the trial court's finding that the . . . [A]greement was valid even though . . . [D]ecedent's actions constituted a material breach and

rescission of the . . . Agreement is not based on competent evidence." Again, the trial court concluded as a matter of law that the Agreement "was and remains the separation agreement between the Plaintiff and Decedent," and material breach of the Agreement requiring rescission of the Agreement would be a legal conclusion we review *de novo*, not a finding of fact. *See Long v. Long*, 160 N.C. App. 664, 668-69. 588 S.E.2d 1, 4 (2003) ("The trial court's decision as to whether a breach is material is a conclusion of law and is therefore not binding on appeal, but is reviewable as any other conclusion of law."). The trial court did not directly address Plaintiff's contention that Decedent's failure to pay her all sums required under the Agreement was a material breach requiring rescission. As to the facts regarding Decedent's performance under the Agreement, the trial court found as follows:

> 13. The [c]ourt reviewed the bank records of . . . Decedent's business, which contained checks written to . . . Plaintiff as agreed in the . . . [A]greement. There is a gap in check payments from November 15, 2020 until July of 2021, which may indicate a reconciliation occurred.

According to the Agreement and to Plaintiff's complaint, Plaintiff contends the "material breach" of the Agreement was that Decedent "still owed Plaintiff[ ] $47,325.00 in payments under the Agreement and had not made any payments since [Plaintiff and Decedent] separated" and that Decedent "had failed to secure an insurance policy to ensure the monies owed to Plaintiff[.]" Plaintiff states "[t]he purpose of [the] . . . [A]greement . . . was to be equitable in nature. The payments from . . . [D]ecedent to Plaintiff[ ] were to make Plaintiff[ ] whole in exchange for . . .

[D]ecedent keeping certain marital property."

> Rescission, an equitable remedy, is allowed to promote justice. The right to rescind does not exist where the breach is not substantial and material and does not go to the heart of an agreement. Rescission of a separation agreement requires proof of a material breach—a substantial failure to perform. *Cator v. Cator,* 70 N.C.App. 719, 722, 321 S.E.2d 36, 38 (1984) (intermittent payment of alimony for six month period a "mere lapse of performance" and not a "substantial failure to perform").

*Fletcher*, 123 N.C. App. at 751-52, 474 S.E.2d at 807.

Here, we first note Plaintiff's contention that Decedent "had not made any payments since [Plaintiff and Decedent] separated" is not supported by the record, and the trial court's finding of fact, which Plaintiff does not challenge as unsupported by the evidence, is binding on appeal. *See Isom*, 279 N.C. App. at 172, 864 S.E.2d at 834. Plaintiff may have meant these payments stopped upon the alleged reconciliation, but this contention is complicated as Plaintiff testified at the hearing reconciliation happened in 2020 but contended in her brief in support of her Petition in the trial court and her brief to this Court that reconciliation happened in 2019. The record shows Decedent was making payments to Plaintiff from the time Plaintiff and Decedent separated in April 2018 through November 2020, totaling $47,675.00 in payments. The trial court found "[t]here [was] a gap in check payments from November 15, 2020 until July of 2021[.]" Decedent died on 20 July 2021. Thus, Plaintiff's claim Decedent "had not made any payments since [Plaintiff and Decedent] separated" is not supported, but both the trial court's finding and the record support

Plaintiff's contention Decedent failed to fulfill the payment schedule set out in the Agreement and still owed her $47,325.00 at the time of his death.

Plaintiff contends that Decedent's missed payments are a "material breach" of the Agreement, sufficient to rescind the Agreement based on *Cator v. Cator*, 70 N.C. App. 719, 321 S.E.2d 36. In *Cator,* the husband made payments from April 1981 through January 1983, but then "did not make the January, March, and June 1983 payments." *Id.* at 721, 321 S.E.2d at 37. And unlike this case, the separation agreement at issue in *Cator*

> expressly grant[ed] the wife the right to bring an action for alimony "if the [h]usband fails to make the monthly payments of alimony as herein specified." Therefore, the alimony provision could be rescinded independently of the rest of the agreement, which provided for the distribution of real and personal property, payment of medical, dental and hospital bills and charge accounts.

*Id*. at 723, 321 S.E.2d at 39 (ellipses omitted). The wife thus wanted to rescind only the alimony provisions of the separation agreement so she could pursue an alimony action. *See id.* at 719-20, 321 S.E.2d at 37. This Court noted that the "husband's breaches occurred simultaneously with the hearings on the motion for summary judgment and that the husband performed intermittently during that time" and concluded there was no substantial failure to perform as the wife did not prove a material breach. *Id*. at 724, 321 S.E.2d at 39.

Here, in addition to the payment schedule set out in the Agreement, the Agreement also released Plaintiff and Decedent from equitable distribution claims,

claims to each other's respective estates, and claims to their pensions including "IRAs, 401k plans, or any defined contribution plan, defined benefits plan, retirement plan or pension, savings plan, or profit sharing plan of any type[.]" This Court in *Cator* was not considering the entire separation agreement as a whole, even though it had other provisions regarding property distribution and payment of other bills, since "the alimony provision could be rescinded independently of the rest of the agreement[.]" *Id.* at 723, 321 S.E.2d at 39. Here, Plaintiff does not raise any issue regarding alimony, and even if the agreement had been rescinded, any potential claim for alimony would have ended upon Decedent's death. *See* N.C. Gen. Stat. § 50-16.9(b) (2023) ("Postseparation support or alimony shall terminate upon the death of either the supporting or the dependent spouse."). The relevant provisions of the Agreement here are the property settlement provisions.

"Where there is such a breach as permits a rescission, the parties, are entitled to be placed in status quo, but if the breach is not so material as in effect to defeat the purpose of the contract, the injured party is compensated by damages." *See Childress v. C. W. Myers Trading Post, Inc.*, 247 N.C. 150, 156, 100 S.E.2d 391, 395 (1957). Similarly, in *Morris v. Scenera Research, LLC*, our Supreme Court again emphasized "[a]s with all equitable remedies, rescission will not lend its aid in any case where the party seeking it has a full and complete remedy at law." 368 N.C. 857, 867, 788 S.E.2d 154, 161 (2016) (citations and quotation marks omitted). The Court stated

> [t]he Court of Appeals incorrectly applied the test for rescission. The court held that Scenera's failure to pay [the] plaintiff his patent bonuses was prima facie evidence of a material breach, and, because [the] defendants breached the contract materially, [the] plaintiff could pursue rescission. But, rescission cannot be the remedy for every material breach. A party may pursue rescission only when a material breach occurs *and* all legal remedies falls short of compensating the injured party for its loss.

*Id*. (emphasis added). And here, just as in *Morris*, Plaintiff's argument as to rescission involves a fixed sum of money which can be recovered via money damages. In fact, Plaintiff's Petition stated in the alternative a request "for an Order enforcing payment of the sums remaining due . . . [Plaintiff] under the . . . Agreement, namely $55,125.00." Thus, Plaintiff has not demonstrated that a legal remedy of damages would "fall[ ] short of compensating" her for her loss and the trial court did not err by concluding the Agreement was valid. *Id*.

## B. Written Modification of the Agreement

Finally, Plaintiff argues "the trial court erred by holding that . . . Plaintiff[ ] and . . . Decedent never modified their separation agreement in writing." (Capitalization altered.) As to modification, the trial court found:

> 15. . . . Plaintiff testified to having to sign on a loan for . . . Decedent. Signing for such a loan is not a modification of the [A]greement.

Plaintiff acknowledges the Agreement was validly executed but contends "the subsequent documents entered into by Plaintiff[ ] and . . . [D]ecedent qualify as a modification of the . . . [A]greement." We disagree.

We first note that Plaintiff does not clearly state exactly how the loan modification documents would "modify" the provisions of the Agreement; she claims only that the loan modification documents are "directly contradictory" to the provision that she would remove her name from the deed. Plaintiff certainly does not contend that the loan modification documents modified the Agreement by voiding the provision of the Agreement which assigned sole responsibility for the mortgage on the property to Decedent. Instead, she seeks to claim ownership of the real property because she had not yet removed her name from the deed, although it is not clear if she is also seeking full sole responsibility for the payment of the mortgage debt.

Again, the trial court's conclusion was labeled as a finding of fact, but we review the trial court's "finding" as to the lack of modification of the Agreement as a conclusion of law. *See In re V.M.*, 273 N.C. App. 294, 298, 848 S.E.2d 530, 534 (2020) ("As a general rule, the labels 'findings of fact' and 'conclusions of law' employed by the lower tribunal in a written order do not determine the nature of our standard of review. Thus, if the lower tribunal labels as a finding of fact what is in substance a conclusion of law, we review that 'finding' as a conclusion *de novo*." (citation, quotation marks, and brackets omitted)).

North Carolina General Statute Section 52-10.1 outlines the general requirements for a valid separation agreement: "Any married couple is hereby authorized to execute a separation agreement not inconsistent with public policy which shall be legal, valid, and binding in all respects; provided, that the separation

agreement must be in writing and acknowledged by both parties before a certifying officer as defined in G.S. 52-10(b)." N.C. Gen. Stat. § 52-10.1 (2023). Plaintiff contends the subsequent deed of trust modifies the Agreement since it

> was signed by both Plaintiff[ ] and . . . [D]ecedent before a notary, also known as a certifying officer. The refinance of the property in the names of both Plaintiff[ ] and . . . [D]ecedent is directly contradictory to the provision in [Plaintiff and Decedents'] . . . Agreement whereby Plaintiff[ ] would remove her name from all documents pertaining to the marital house and property.

Plaintiff relies on *Jones v. Jones*, 162 N.C. App. 134, 590 S.E.2d 308 (2004), to contend the deed of trust was a modification of the Agreement. However, *Jones* merely lays out the requirements of North Carolina General Statute Section 52-10.1 and emphasizes oral modifications are not valid. *See id*. at 137, 590 S.E.2d at 310-11. *Jones* dealt with a situation where "the court appears to have relied on testimony from [the] defendant about conversations with [the] plaintiff in which he contended that [the plaintiff] agreed to a modified alimony arrangement" and concluded "[b]ecause separation agreements cannot be orally modified, the testimony of conversations between [the] plaintiff and [the] defendant, even if corroborated, could not constitute a valid modification of the earlier agreement." *Id*. at 138, 590 S.E.2d at 311-12. *Jones* is inapposite to this case as there is no contention the Agreement was orally modified.

Here, Plaintiff and Decedent first executed a deed of trust for the real property on 12 January 2009. On 29 January 2014, Plaintiff and Decedent entered into a loan

modification agreement to change the payment schedule of the original mortgage. On 3 April 2018, Plaintiff and Decedent entered into the Agreement, which provided that Plaintiff or Decedent would pay "any indebtedness secured against, or attributable to, any item of property that either party is receiving under this [A]greement[.]" The [A]greement also specifically provided Decedent would pay the "house an (sic) land payment" and Plaintiff would take her name off of all "home an (sic) land" documents. The Agreement set out a schedule of payments Decedent was to make to Plaintiff; Decedent was to pay "a total of $75,000.00 in cash payments to [Plaintiff] in exchange for her release of the entireties property."

On 26 April 2021, Plaintiff and Decedent refinanced the loan again in a deed of trust modification agreement, which modified the maturity date of the original deed of trust. The writing Plaintiff contends modified the Agreement was part of the April 2021 refinancing. Plaintiff argues that this document "is directly contradictory" to a provision in the Agreement that Plaintiff "agrees to have her name took (sic) off all home an[d] land documents." However, the 2021 deed of trust modification agreement does not mention the Agreement.

"Applying contract principles, we determine the intent of the parties by the plain meaning of the written terms. We must decide the case, therefore, by what is written in the contract actually made by them." *RL Reg'l N.C., LLC v. Lighthouse Cove, LLC*, 367 N.C. 425, 428, 762 S.E.2d 188, 190 (2014) (citations, quotation marks, and ellipses omitted).

> The making of a second contract dealing with the subject matter of an earlier one does not necessarily abrogate the former contract. To have the effect of rescission, it must either deal with the subject matter of the former contract so comprehensively as to be complete within itself and to raise the legal inference of substitution, or it must present such inconsistencies with the first contract that the two cannot in any substantial respect stand together. Before the new contract can be accepted as discharging the old, the fact that such was the intention of the parties must clearly appear.

> If upon comparison it should be found that rescission has not been effected, the two instruments must be read and construed together in ascertaining the intent of the parties and in determining what portions of the agreement are still enforceable. In such construction the rules applied to interpretation of a single contract are applicable, perhaps with added propriety. We must, of course, keep within the bounds of the writings, but the circumstances surrounding their execution, the relation of the parties and the object to be accomplished, are all to be consulted in arriving at the intent.

*CL Howard Invs. I, LLC v. Wilmington Sav. Fund Soc'y FSB*, ___ N.C. App. ___, ___, 911 S.E.2d 384, 391 (2024) (citation omitted).

Plaintiff is correct that the 2021 deed of trust modification agreement is in writing, signed by Plaintiff and Decedent, and acknowledged before a certifying officer, a notary; but simply meeting the broad requirements for execution or modification of a separation agreement under North Carolina General Statute Section 52-10.1 does not, by itself, show Plaintiff and Decedent intended to modify the Agreement. The Agreement and deed of trust modification are two separate contracts, with different subject matter and intentions. These documents are not

even "directly contradictory" as Plaintiff contends. At the time Decedent and Plaintiff entered into the Agreement, both were responsible for the existing mortgage on the real property but Decedent received sole ownership of the property and agreed to pay the mortgage. In 2021, they refinanced that mortgage. At most, the fact that Plaintiff signed the deed of trust modification documents tends to highlight the fact that Plaintiff had not yet taken her name off "all home an[d] land documents" as she was obligated to do under the Agreement, so the lender would have required her signature. In any event, the loan modification does not show Plaintiff and Decedent intended the deed of trust modification to have any effect on the Agreement. And as the deed of trust modification does not reference the Agreement, the trial court did not err by concluding the deed of trust did not modify the Agreement. This argument is overruled.

## IV. Conclusion

The trial court did not err in concluding the Agreement was still valid even if Plaintiff and Decedent had reconciled before his death. The trial court also did not err by concluding the written deed of trust did not modify the Agreement. Therefore, we affirm the trial court's order declaring that the Agreement is valid.

AFFIRMED.

Judges ZACHARY and CARPENTER concur.